**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE PALMAZ SCIENTIFIC, INC. et al, | § § | |
| *Debtor*. | § § | |
| SUSAN E. HARRIMAN, | § § | Civil Action No. SA-16-CV-1021-XR |
| *Appellant*. | § § § § § | |

**ORDER**

On this day, the Court considered HC Litigation Fund, LLC's Emergency Motion to Prohibit Ongoing Litigation Abuses and for Sanctions (docket no. 3), and HC's Supplemental Motion for Sanctions (docket no. 17).

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This case has a long history. In short, Palmaz Scientific, Inc. (PSI) was formed in 2008. Julio Palmaz, M.D. was its Chairman and Chief Scientist. Steven B. Solomon served as PSI's chief executive officer. Dr. Palmaz previously had co-developed a coronary stent. PSI was in the medical alloy technology business.

Susan Harriman was not a shareholder of PSI. She allegedly solicited some type of business relationship with PSI in 2012 by contacting Mr. Solomon. According to PSI, no business relationship was formed. Per PSI, Ms. Harriman and Mr. Solomon reached some type of "deal" allegedly unrelated to PSI in 2014. That "deal" went "south" and allegedly Ms. Harriman became "enraged" with Mr. Solomon. PSI alleges that it is an "innocent bystander" to the conflict that ensued between Ms. Harriman and Mr.

1

Solomon. On June 26, 2014, it sent Ms. Harriman a letter asking that she "immediately cease and desist any further publication and dissemination of any false and disparaging information concerning Palmaz Scientific, Inc., Mr. Solomon, or their officers, owners, and affiliates."

On August 27, 2015, PSI filed suit against Ms. Harriman in this federal court. The case was assigned to the Hon. Fred Biery. PSI also filed an application for an ex parte temporary restraining order. On August 28, Judge Biery granted the TRO finding that Ms. Harriman was "engaged in false and misleading commercial speech and harassing and threatening behavior." The Court further ordered that Ms. Harriman desist and refrain from making any false or misleading statements or communications about various individuals and entities. On September 16, 2015, a hearing was held. Without ruling on the motion to dismiss for lack of subject matter jurisdiction, Judge Biery either ordered or "advised" Ms. Harriman not to have any contact with Mr. Solomon. On October 7, 2015, Judge Biery entered an order dismissing the case for lack of subject matter jurisdiction.

Thereafter, Ms. Harriman filed suit against PSI, Dr. Palmaz, Mr. Solomon, and others in the 134th Judicial District of Dallas County, Texas. PSI filed a counterclaim arguing that Ms. Harriman's actions would cause financial damage to PSI. This state court case has been stayed pending the resolution of this matter.

PSI argues that Ms. Harriman's conduct, her "malicious, defamatory smear-campaign," her "instigation" of "baseless Government investigations[1]" and interference with business deals and investments "drove" PSI into the filing of bankruptcy on March 4, 2016.[2]

---

[1] Apparently on February 25, 2016, the Department of Justice notified PSI that it was closing its file, taking no further action, and the Grand Jury investigation in the matter was concluded.

[2] On August 13, 2015, PSI notified its shareholders that its "efforts to partner with large medical device manufacturers have encountered a consistent negative attitude by their R&D teams. … After several years of unproductive attempts we have concluded that providing services as a technology company is not in our best interest and would represent a waste of our potential to become a major player in the field…. At this juncture, I recommend that we re-focus our efforts into taking a new generation intravascular stent all the way to U.S. and

In Bankruptcy Court, PSI originally proposed on June 10, 2016 a plan that would allow the Dallas state court case to be acquired by Vactronix Scientific.[3] Harriman filed no objections in the Bankruptcy Court. She now argues that she had no objection because the original Plan provided "nothing in this Plan shall waive release or limit any claim or liability asserted in the Harriman case."

Harriman alleges that without written notice to her the proposed Plan was modified as follows: Vactronix designated "HC Litigation Fund, LLC as the party to be assigned any and all of the Debtors' claims and rights … in the Harriman Case. HC Litigation Fund, LLC shall also assume any and all of the Debtor's liability, if any, remaining after Bankruptcy … for claims presently asserted against the Debtor arising out of or relating to in the Harriman Case." The modified Plan also purported to enjoin Harriman from "commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtors, the Litigation Trust, the Litigation Trustee, Litigation Trust Assets, or the D&O Insurance Policies."

The deadline to file a proof of claim in the Bankruptcy Court was July 5, 2016. Harriman filed no proof of claim. She argues that the first time she "learned in writing[4]" of the modified Plan was July 15, 2016.

On June 29, 2016, Harriman filed a motion with the Bankruptcy Court requesting that it reconsider its decision confirming the modified Plan.[5] The Bankruptcy Court denied the motion.

---

international market approval. To this end, we must restructure our leadership and raise capital in order to execute a highly focused and targeted strategy." PSI acknowledged it "had a very difficult year financially, and has completely exhausted its financial resources. As a result of its inability to develop partnerships with established players in the field, the company presently has minimal cash, no revenue and mounting debt. Efforts to raise additional capital through equity securities offerings have not been successful. Furthermore a $15 million debt offering in the spring of this year, which was supported with $2 million in investments from members of the Board of Directors also failed to gain any interest from brokers that have offered our securities for sale in the past or our shareholders."

[3] Dr. Palmaz's wife is either an officer or director of this corporation.
[4] The Court notes the curious phrase used by Appellant in her Brief filed November 14, 2016 in this proceeding.
[5] The Court notes that Harriman could have filed a proof of claim in the Bankruptcy Court on this same date and such a filing would have met the July 5 deadline.

Thereafter, Harriman filed this appeal on October 13, 2016, arguing that the Bankruptcy Court erred in denying her motion to reconsider.

This appeal was initially assigned to Judge Biery. On November 7, HC Litigation Fund, LLC filed its Emergency Motion to Prohibit Ongoing Litigation Abuses and for Sanctions. The motion recounts the history of this case as stated above, and also asserts that Harriman sent two "threatening and defamatory texts." The motion sought an expedited hearing, and requested that the Court issue an Order citing Harriman to appear and show cause why she should not be sanctioned for her "malicious and egregious conduct and prohibited from further harassment and intimidation of the parties." Judge Biery held a hearing on this motion on November 28, 2016. During that hearing HC's attorney argued that beyond the "childish behavior" Judge Biery referenced, his client believed that a court ordered inspection of Harriman's computer and cell phones were necessary to show that Harriman was acting in an intentional manner to disrupt "this proceeding."[6] HC's counsel also sought to justify the inspection of Harriman's computer and cell phone asserting that HC believed that Harriman was impersonating other individuals and accessing confidential information. HC's counsel also believed that an inspection may reveal communications between Harriman and the Litigation Trustee. No evidence was presented at the hearing, only argument of counsel and records from the 2015 proceedings, along with some declarations filed under seal. Judge Biery ordered that the computer and cell phone be made available for imaging and a forensic investigation, but allowed attorney-client material to be redacted. He ordered Harriman to disclose any passwords should any of the material be encrypted. He "reserved the right" to refer the gathered data to either federal or state law enforcement officials.

Two days after the hearing Judge Biery recused himself. This appeal has now been transferred to the undersigned judge. On December 13, 2016, a hearing was conducted regarding the Emergency

---

[6] Although counsel referenced "this" proceeding, he thereafter went to recount the Bankruptcy Court proceedings, the Dallas state court case, and the 2015 case, where the Court ultimately concluded it had no subject matter jurisdiction – a case filed by PSI.

Motion. After hearing the argument of counsel, this Court vacated Judge Biery's verbal order that an imaging and forensic investigation of Harriman's computer and cell phone be done. This appeal is focused on whether the Bankruptcy Court erred in denying Harriman's motion for reconsideration. The Court will now turn to an analysis of whether this Court's inherent authority should be utilized to sanction Ms. Harriman.

## II. Analysis

"A district court has the inherent authority to impose sanctions 'in order to control the litigation before it.'" *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (citing *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 703 (5th Cir.1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). If the offending party's "conduct was neither before the district court nor in direct defiance of its orders, the conduct is beyond the reach of the court's inherent authority to sanction." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d at 461.

Accordingly, improper conduct, if any, that occurred in the Bankruptcy Court or the Dallas state court is beyond the reach of this Court's inherent authority to sanction.

After separating any alleged offensive conduct by Ms. Harriman prior to October 13, 2016[7], this Court considers the following instances of alleged misconduct identified by PSI: (1) text sent from Harriman to Dr. Palmaz on November 4, 2016; (2) text sent from Harriman to PSI's attorney Jason Davis on November 4; (3) phone call allegedly made by Harriman to a relative of Jason Davis on November 21; and (4) a break-in of Jason Davis's car on November 28. The last two items are easily disposed of. HC presents no competent evidence other than subjective belief and suspicion that Harriman engaged in these activities.

---

[7] The Court has not wholly disregarded reviewing the laundry list of alleged offensive conduct HC attributes to Harriman. The Court has weighed this alleged conduct in connection with interpreting the texts sent by Harriman on November 4, 2016.

Ms. Harriman admits to sending the two text messages identified above. In summary, the texts to Mr. Davis accuse him of helping his clients commit crimes, omitting portions of Mr. Solomon's texts during a court proceeding, and having an ex parte conversation with Judge Biery's law clerk wherein he allegedly instructed the law clerk to summon marshals into the courtroom. Further, Harriman claims in her texts that she had a friend inside the FBI that told her Mr. Davis was demanding her arrest. She further implies it was impossible for Judge Biery's law clerk to make enough income to make her mortgage payment. The text concludes that Mr. Davis was "going to rue the day you EVER started trying to ruin my life." The text to Dr. Palmaz forwards the texts sent to Mr. Davis. The text goes on to state that Dr. Palmaz "didn't pay" a number of persons and that Dr. Palmaz's wife "took a lot of money from these investors."

This conduct did not occur before the Court. The conduct may have violated Judge Biery's August 28, 2015 Order, but that Order lacks effect because the Court lacked subject matter jurisdiction. No other Order from this District Court was in effect on November 4 that Ms. Harriman may have violated. Despite HC's insistence there has been no substantial disruption of this appeal.

Nevertheless, HC argues that this Court is vested with broad inherent authority to sanction a litigant for bad faith and willful abuse of the litigation process. HC is correct that a court's "inherent authority includes the power to sanction 'abusive litigation practices.'" *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). But a court must exercise its inherent powers with "restraint and discretion." *Wilson v. Novartis Pharm. Corp.*, 575 F. App'x 296, 298 (5th Cir. 2014). A district court's decision to invoke its inherent sanctioning power is only upheld when clear and convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process. *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014). For example, in *Meyers v. Textron Fin. Corp.*, 609 F. App'x 775 (5th Cir. 2015), inherent authority sanctions were upheld where principals and their lawyer made nine false representation in a judicial proceedings in an attempt to circumvent res judicata. On the other hand, "mere suspicions do not add

up to clear and convincing evidence of [a party's] bad faith." *In re Moore*, 739 F.3d 724, 731 (5th Cir. 2014) ("Neither imputed bad faith nor suspicion alone justifies the invocation of the inherent power. In sum, all of the bankruptcy court's theories fall short of the stringent standard of clear and convincing evidence of bad faith.").

In this matter HC fails to establish by clear and convincing evidence that Harriman should be sanctioned pursuant to this Court's inherent authority. Her conduct has been crude and uncivil. However, that is not sufficient to merit sanctions in and of itself.

**Conclusion**

HC Litigation Fund, LLC's Emergency Motion to Prohibit Ongoing Litigation Abuses and for Sanctions (docket no. 3) is DENIED. HC's Supplemental Motion for Sanctions (docket no. 17) is DENIED. Harriman agreed at this Court's December 13, 2016 hearing not to contact various persons and entities. She further agreed to the preservation of her computer and cell phone in the event any data therein would be necessary for use during this Bankruptcy Appeal or the Dallas state court proceedings. The Court issued a verbal order from the bench that the no contact order be honored and the computer and cell phone data be preserved. This Court expects full compliance with these orders.

SIGNED this 22nd day of December, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE