| | | |
|---|---|---|
| IN RE PALMAZ SCIENTIFIC, INC., ET AL., | § § § | |
| *Debtors,* | § § | |
| SUSAN E. HARRIMAN, | § § | Civil Action No. SA-16-CV-1021-XR |
| *Appellant,* | § § | Bk. Adv. No. 16-50552-CAG |
| *v.* | § § | |
| VACTRONIX SCIENTIFIC, INC., ET AL., | § § § | |
| *Appellees.* | § | |

## ORDER

This civil action is before the Court on appeal from the United States Bankruptcy Court for the Western District of Texas. For the reasons stated below, the judgment of the bankruptcy court is AFFIRMED and the appeal is DISMISSED.

## BACKGROUND

In a separate lawsuit initiated before any bankruptcy proceedings, Appellant Susan Harriman sued Debtor Palmaz Scientific, Inc. in Dallas state court. Dist. Ct. Docket no. 6 at 3. Before the state court could render judgment in the Dallas lawsuit, Debtor filed for Chapter 11 bankruptcy on March 4, 2016. *Id.*; Bankr. Docket no. 1.

Originally, the deadline for filing a proof of claim in the bankruptcy proceeding was July 5, 2016. Bankr. Docket no. 41 at 1. Notice of this deadline was sent to Appellant at a Dallas address. *Id.* at 7. On May 10, 2016, the bankruptcy court shortened the claims deadline to June 1, 2016. Bankr. Docket no. 208. Notice of this change was sent to Appellant at the same Dallas

address. Bankr. Docket no. 214-1 at 8. Appellant did not file a proof of claim by either the original deadline or the shortened deadline

On June 10, 2016, Debtor proposed a plan in which a third party, Vactronix Scientific, Inc., agreed to purchase the Dallas lawsuit as a "pass-through," such that Vactronix would acquire Debtor's rights to and liability from the Dallas suit: "If Vactronix is the Purchaser and acquires the Debtor's claims in the [Dallas lawsuit], Vactronix shall assume any and all of the Debtor's liability arising out of or relating to the [Dallas lawsuit], without limiting any non-Debtor party's liability for such claims, including applicable insurance policies." Bankr. Docket no. 282 at 15. That Plan also stated that "nothing in this Plan shall waive, release or limit any claims or liability asserted in the [Dallas lawsuit]." *Id*. at 28.

That day, the Bankruptcy court held a sale hearing. *See* Bankr. Docket no. 423. At that hearing, Mr. Jim Hoffman, an attorney, appeared and made a $10 bid for the rights and liabilities from the Dallas lawsuit. *Id*. at 19. Mr. Hoffman stated that he represented himself and was making the bid as an individual, though he later represented Appellant before the bankruptcy court and represents her on this appeal. Bankr. Docket no. 423 at 20; Bankr. Docket no. 367 at 5; Dist. Ct. Docket no. 1 at 6. The bankruptcy court found that Mr. Hoffman's $10 offer did not qualify as a competing bid based on a prior order regarding sale procedures, and approved the sale. Bankr. Docket no. 423 at 43–44. The bankruptcy court set a June 24 deadline for objections to the plan and set a confirmation hearing for June 27. *Id*. at 62; *see also* Bankr. Docket no. 294. Mr. Hoffman asked for permission to appear telephonically for the June 27 confirmation hearing, which the bankruptcy court granted. Bankr. Docket no. 294 at 58.

Appellant filed no objections to the plan by the June 24 deadline. At the June 27 confirmation hearing, limited objections were heard, though it does not appear that Mr. Hoffman

attended (telephonically or otherwise). Bankr. Docket no. 355. At the hearing, the bankruptcy court discussed a change to the language of the Plan, which purportedly changed the Plan's treatment of the Dallas lawsuit. *Id*. at 55–57. This language, which Debtor ultimately submitted in its July 14 Second Amended Joint Plan of Reorganization and the bankruptcy court approved in its July 15 Order Confirming the Plan, reads as follows:

> Vactronix designates HC Litigation Fund, LLC as the party to be assigned any and all of the Debtors' claims and rights (including any applicable insurance coverage) in the Harriman Case. HC Litigation Fund, LLC shall also assume any and all of the Debtor's liability, if any, remaining after Bankruptcy (see 11.4 herein and the Order confirming the Plan), for claims presently asserted against the Debtor arising out of or relating to in the Harriman Case. Nothing herein shall limit any non-Debtor party's liability, including coverage under any applicable insurance policies. Provided, however, that neither HC Litigation Fund, LLC, nor any other Person, shall have any right to any D & O Insurance Recovery under any D & O Insurance Policy or any proceeds of, or coverage under, any such policy.

*Id*.; Bankr. Docket no. 351 at 14–15; Bankr. Docket no. 356 at 26–27.

Appellant maintains that the first time she learned of this change to the Plan was on July 15 when the bankruptcy court entered its order confirming the Plan as amended. Docket no. 6 at 12. On July 29, 2016, Appellant, appearing formally for the first time before the bankruptcy court, filed a motion to reconsider the bankruptcy court's order confirming the Plan. Bankr. Docket no. 367. Appellant argued that changes to the Plan's treatment of the Dallas lawsuit adversely affected her rights in that case. *Id*. at 3. On August 1, the bankruptcy court held a hearing on this motion, at which Mr. Hoffman argued on Appellant's behalf. Bankr. Docket no. 451. Mr. Hoffman acknowledged that he did not file an objection to the confirmation of the Plan. *Id*. at 16. He acknowledged that Appellant knew of the bankruptcy case. *Id*. at 73. Ultimately, the bankruptcy court denied Appellant's motion for reconsideration because, in short, Appellant never filed a proof of claim in the bankruptcy proceeding. *Id*. at 76–80; Docket no. 374.

Now before this Court is Appellant's appeal of the Bankruptcy court's denial of her Motion for Reconsideration.

## DISCUSSION

### I.   Appellant's Issues on Appeal

Appellant designates four points on appeal: (1) that the Confirmed Plan should be reconsidered to account for Appellant's interest in the Dallas lawsuit; (2) that the filing of a proof of claim in the bankruptcy court was not required to preserve Appellant's claims in the Dallas lawsuit; (3) Appellant's Due Process rights were violated by the bankruptcy court's approval of the Confirmed Plan; and (4) the preservation of Appellant's claims in the Dallas lawsuit is mandated by equity. Docket no. 6 at 2–3.

The Court finds that Appellant lacks standing to appeal because she failed to file a proof of claim or otherwise appear or object before the bankruptcy court. Furthermore, contrary to her assertion on the third point, the Court finds that Appellant was not deprived of due process. As a result, Appellant lacks standing, and the Court need not reach the merits of her objections to the confirmed plan.

### II.   Standard of Review

#### a.   Appellate Standard

On appeal, a bankruptcy judge's conclusions of law are reviewed *de novo*, whereas findings of fact will not be set aside unless clearly erroneous. *In re National Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000). The district court reviews mixed questions of law and fact *de novo*. *Id.*

### b. Legal Test for Standing

Appellant argues that the Fifth Circuit does not require her to file a proof of claim or objection in bankruptcy court to preserve her standing to appeal the denial of her motion for reconsideration. Further, she argues that was not given adequate notice of the shortening of the claims deadline from July 5 to June 1, which she says deprived her of due process.

Appellees[1] argue that Appellant lacks standing to appeal the bankruptcy court's ruling because she did not file a proof of claim or otherwise object to confirmation of the plan. Appellees add that Appellant's due process rights were not violated by the shortening of the claims bar deadline.

Bankruptcy courts are not created by Article III of the Constitution and thus are not necessarily bound by traditional standing requirements. *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004). Previous versions of the Bankruptcy Code provided that to have standing to appeal a bankruptcy court's order, one must be a "person aggrieved" by the order of a bankruptcy referee. 11 U.S.C. § 67(c) (1976). This provision has since been omitted from the Code, but the "person aggrieved" test has survived as the baseline for standing in bankruptcy appeals in many circuits, including the Fifth Circuit. *In re Coho*, 395 F.3d at 202. This test is more exacting than traditional constitutional standing and requires a stronger causal nexus between act and injury. *Id*. Thus, this inquiry asks whether an appellant was "directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id*. (quoting *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).

Beyond satisfying the "person aggrieved" test, numerous circuit courts have gone a step further by also requiring that an appellant timely file an objection to the bankruptcy plan in the

---

[1] Appellees are Vactronix, the third-party purchaser of Debtor's assets, and HC Litigation Fund, the entity to receive the rights and liabilities from the Dallas lawsuit.

bankruptcy court. *E.g. In re Weston*, 18 F.3d 860, 864 (10th Cir. 1994) (holding a party that elects not to participate in a matter before the bankruptcy judge, has "no standing to appeal the bankruptcy court's resolution of the matter"); *see also* 1-5 ALAN N. RESNICK & HENRY SOMMER, COLLIER ON BANKRUPTCY ¶ 5.07 (16th ed. 2016) (recognizing that "an appearance at and objection to (or support of) the matter being considered by the bankruptcy court have been held prerequisite to the right to appeal."). As Appellees point out, the Seventh, Ninth, and Tenth Circuits subscribe to this view. *In re Ray,* 597 F.3d 871, 874 (7th Cir. 1992) ("Prerequisites for being a 'person aggrieved' are attendance and objection at a bankruptcy court proceeding." (quoting *In re Schultz Mfg. & Fabricating Co.*, 956 F.2d 686, 690)); *In re Comm'l W. Fin. Corp.*, 761 F.2d 1329, 1335 (9th Cir. 1985) ("[W]e agree that attendance and objection should usually be prerequisites to fulfilling the 'person aggrieved' standard"); *In re Weston*, 18 F.3d at 864 (10th Cir. 1994).

The judicial efficiency of the bankruptcy system justifies this requirement. *In re Comm'l W. Fin. Corp.*, 761 F.2d at 1335 (9th Cir. 1985). With numerous creditors and issues arising in each bankruptcy proceeding, the requirements of attendance and objection before the bankruptcy court limit appellate standing in order to preserve the efficiency of the system and promote the finality of a bankruptcy court's orders. *Id.*; *see also* Richard B. Levin, *Bankruptcy Appeals*, 58 N.C. L. REV. 967, 977–78 (1980) (discussing the attendance and objection requirements as furthering judicial economy). A counterbalance to judicial efficiency and a corollary to this requirement, however, is due process. To be deprived of standing for a failure to appear and object before the bankruptcy court, a party generally must receive proper notice of the proceedings below. *See In re Ray*, 597 F.3d at 874 (quoting *In re Comm'l W. Fin. Corp.*, 761 F.2d at 1335 (9th Cir. 1985)); *see also* Levin, *Bankruptcy Appeals* 278 n. 78 ("This rule may

differ, however, if the objecting party did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken. In that case, the requirements of due process outweigh those of judicial efficiency and certainty."). Thus, to the extent that an appearance and objection are required for Appellant to have standing on appeal, this standard also encompasses whether Appellant's failure to do so is excused by inadequate notice and her due process rights.

A minority of circuit courts go in the opposite direction on this question, inquiring only into whether a party is a "person aggrieved" without regard to whether the party appeared or objected before the bankruptcy court. *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747–48 (2d Cir. 1991); *In re Urban Broad. Corp.*, 401 F.3d 236, 244 (4th Cir. 2005). On this point, the Fourth Circuit reasoned that

> defining standing by whether a party waives or forfeits rights to object to claims, as did the district court, misconstrues the standing requirement as we have defined it, i.e., that the appellant show that he has been *directly and adversely affected pecuniarily* by the bankruptcy order. Moreover, defining standing by whether an appellant has objected to an order or attended a hearing conflates basic notions of standing with notions of waiver and forfeiture. Accordingly, we adhere to the formulation of standing articulated in [*In re Clark*, 927 F.2d 793, 795 (4th Cir. 1991)] and, in this case, ask only whether [the appellant] was directly and adversely affected pecuniarily by the bankruptcy court's order.

*In re Urban Broad. Corp.*, 401 F.3d at 244 (emphasis original).

The Fifth Circuit has not reached an express holding in either direction, but has indicated acceptance of the Seventh, Ninth, and Tenth Circuits' appearance and objection requirement. In *In Matter of the Watch, Ltd.*, 257 F. App'x 748, 748–50 (5th Cir. 2007), a creditor appealed the bankruptcy court's order approving a sale of the debtors' assets, even though the creditor made no objections before the bankruptcy court. The Fifth Circuit ultimately held that the appeal was moot. *Id.* Before reaching this conclusion, however, the court addressed the possibility that the

creditor lacked standing to appeal due to his failure to object. *Id*. at 749–50. The court summarized the Seventh, Ninth, and Tenth Circuits' reasoning, which it described as "cogent," and noted a conflict with the view of the Fourth Circuit. *Id*. But because the court decided the appeal on mootness grounds, it did not reach a holding on the appellate standing question. *Id*.

In *In re Tullius*, 500 F. App'x. 286, 287 (5th Cir. 2012), creditors subpoenaed a financial institution under Bankruptcy Rule 2004, seeking financial records from the debtor and his business partner in an attempt to uncover fraudulent transactions. Through a series of oral discovery orders, the bankruptcy court granted the request in a limited way and sanctioned the creditors. *Id*. at 287–88. The district court dismissed the creditors' appeal because the discovery orders were interlocutory. *Id*. at 288. The Fifth Circuit ultimately agreed with the district court that the discovery orders were interlocutory and dismissed the appeal. *Id*. at 291. In arriving at this conclusion, the Fifth Circuit addressed the creditors' argument that "because the bankruptcy court confirmed the debtor's plan and no adversary proceedings ever took place, [the creditors would have had] no final decisions from the bankruptcy court from which to appeal." *Id*. at 290–91. After characterizing the bankruptcy court's order approving the plan as an appealable final order, the Fifth Circuit noted in a footnote that

> [w]hether [the creditors] would have standing to appeal a confirmation order in this case, absent an earlier objection, is doubtful. See 1 COLLIER ON BANKRUPTCY § 5.07 (noting, in a discussion about standing to appeal an order of the bankruptcy court, that "an appearance at and objection to (or support of) the matter being considered by the bankruptcy court have been held prerequisite to the right to appeal").

*Id*. at 290 n. 13 (citations and quotations original, alterations added).

Finally, aside from the Fifth Circuit's statements, the Bankruptcy Court for the Western District of Texas has also required appearance and objection before the bankruptcy court as a prerequisite to a motion to reconsider, except where such a motion addresses subject matter

jurisdiction. *In Re Camp Arrowhead, Ltd.*, 451 B.R. 678, 693–94 (discussing *In re Ray*, 597 F.3d at 872–73 (7th Cir. 2010)).[2]

The Fifth Circuit's statements in *In Matter of the Watch* and *In re Tullis* regarding the appearance and objection prerequisite to person aggrieved standing on appeal are clear dicta. Still, they are strong indications of how the Fifth Circuit would rule if it were actually presented with the question. Furthermore, the reasoning behind the appearance and objection requirement is persuasive. Bankruptcy proceedings are complex both in the number of parties involved and the number of issues at play. The efficiency and economy of the bankruptcy system are paramount, and finality serves these goals. Requiring potential claimants to take the simple step of filing a proof of claim or lodging an objection before the bankruptcy court is logical. Otherwise, bankruptcy proceedings could be disrupted by dilatory late-comers or, worse yet, those strategically withholding claims and objections with the goal of asserting them only on appeal.

While this requirement burdens potential claimants and others to stay apprised of bankruptcy proceedings, the Seventh and Ninth Circuits build due process and fairness into this burden—a failure to appear and object before the bankruptcy court is excused and an appellant nevertheless has standing where he "d[oes] not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken." *In re Ray*, 597 F.3d at 874

---

[2] The question in *In re Camp Arrowhead* came before the bankruptcy court on a significantly different procedural posture, but the court nevertheless approved of the Seventh Circuit's appearance and objection requirement and applied it in that case. There, a party that purportedly contracted to purchase assets from the debtor filed a motion for reconsideration, challenging the bankruptcy court's subject matter jurisdiction and several other matters. *In re Camp Arrowhead*, 451 B.R. at 685–87. The bankruptcy court found that "the scope of reconsideration will be limited to whether this court had subject matter jurisdiction." *Id.* at 695. In reaching its decision to focus only on the jurisdictional question while disregarding all other objections that the movant could have raised before, the court relied heavily on *In re Ray*'s reasoning regarding the attendance and objection prerequisite for standing. *Id.* at 694 ("With regard to the remaining arguments for reconsideration urged by [the movant], however, the teaching of *Ray* is that reconsideration on those grounds is not proper. [The movant] has not adequately demonstrated that it 'did not receive proper notice of the proceedings below and of his opportunity to object to the action proposed to be taken.'" (quoting *In re Ray*, 597 F.3d at 874)).

(quoting *In re Comm'l W. Fin. Corp.*, 761 F.2d at 1335). Thus, the standard, as applied, balances the efficiency of the bankruptcy proceedings with individuals' entitlement to notice. Indeed, it would make little sense to deprive an appellant of standing to appeal a decision based on his failure to participate in the process when he was unaware of that process.

In sum, this Court is persuaded by the reasoning of the Seventh, Ninth, and Tenth Circuits, and believes that the Fifth Circuit would agree if it had an opportunity to decide the question. The Court disagrees with the Second and Fourth Circuits. Accordingly, "[i]f a party fails to appear at a hearing or object to a motion or proceeding, it cannot expect or implore the bankruptcy court to address the issues raised by the motion or proceeding for a second time," and will lack standing to appeal that decision. *In re Ray*, 597 F.3d at 874. So long as a party had proper notice of the proceedings below and of its opportunity to object to the action proposed to be taken, a failure to appear and object before the bankruptcy court deprives that party of standing to bring an appeal. *Id.*

## III. Application

Appellant does not dispute that she failed to file a proof of claim in the bankruptcy proceedings below, and cites no authority for the proposition that she was entitled to rely on the June 10 Plan in deciding not to do so. Further, she admits that she did not lodge any objections to the confirmation of the Plan, which she later challenged through the motion for reconsideration that has now been appealed to this Court. As discussed in detail above, such actions were required in order for her to have standing on appeal.

This straightforward finding is not alone dispositive. The Court still must determine whether the appearance and objection requirement was excused by a lack of notice of the proceedings below and of Appellant's opportunity to object. In particular, Appellant argues that

she did not receive notice of the bankruptcy court's shortening of the claims deadline from July 5 to June 1, which should therefore excuse her from appearing and objecting before the bankruptcy court and permit her to bring this appeal.

As an initial matter, the Court notes that Appellant makes this argument in the alternative to her legal position that an appearance and objection before the bankruptcy court were simply not required. Appellant is forced to make this argument in the alternative because she admits that she never filed a proof of claim and attempts to justify this failure by saying that she "relied on [the June 10 Plan] in deciding not to file a claim in the bankruptcy before the July 5, 2016 deadline because her interests in the Dallas Lawsuit were protected by [that] proposed plan." Docket no. 6 at 10. Having found that she was required to appear and object before the bankruptcy court, her primary argument fails and all that remains is the argument that she did not have adequate notice of the bankruptcy proceedings.

These arguments are not necessarily inconsistent, though Appellant's primary argument certainly strains her secondary one. At the bankruptcy court's August 1 hearing on Appellant's motion to reconsider, the bankruptcy court asked Mr. Hoffman whether he was arguing that Appellant did not know about the bankruptcy case. Docket no. 451 at 73. Mr. Hoffman replied, "No, I'm not arguing it at all . . . No. She knew about the bankruptcy case." *Id.* Thus, because it is undisputed that Appellant knew of the bankruptcy proceedings, Appellant is forced to make the more nuanced argument that she lacked notice of the bankruptcy court's shortening of the claims deadline, which violates her due process rights, excuses her from appearing and objecting before the bankruptcy court, and thus preserves her standing on appeal.

Aside from having actual knowledge of the bankruptcy proceedings, Appellant does not dispute that she had actual knowledge of the original deadline, the proposed sale of the Dallas

lawsuit to Vactronix, and the June 10 Plan. Bankr. Docket no. 451 at 73; Dist. Ct. Docket no. 6 at 6. By her own timeline, Appellant believed that a proof of claim needed to be filed by July 5, but that she learned of the Second Amended Plan for the first time on July 15. Docket no. 6 at 12. Nevertheless, Appellant did not file a proof of claim by July 5, even though she would have been operating under the mistaken belief that she still could have timely done so.

Assuming that Appellant's own timeline does not contradict her desire to file a proof of claim, she was not deprived of notice of the bankruptcy proceedings in a constitutionally deficient way that excuses her non-appearance and non-objection. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). This standard applies to notifications of claims bar dates in bankruptcy proceedings, but entails a fact-specific, case-by-case inquiry to determine whether "notice [was] reasonably calculated, given the factual circumstances, to inform claimants of a proceeding that affects their rights." *In re Kendavis Holding Co.*, 249 F.3d 383, 387–88 (5th Cir. 2001); *Matter of Robintech, Inc.*, 863 F.2d 393, 396 (5th Cir. 1989). Particularly important, but not necessarily dispositive, is whether a creditor has general awareness of the pending bankruptcy. *Matter of Robintech*, 863 F.2d at 397. Furthermore, where a creditor has actual knowledge of the bankruptcy proceeding in time to protect its rights, technical deficiencies in service of notices do not violate due process. *Matter of Sam*, 894 F.2d 778, 781–82 (5th Cir. 1990).

On these facts, Appellant was not denied due process. It is undisputed that Appellant knew of the bankruptcy, and indeed, Appellant had far more than a "general awareness" of the

proceedings—at minimum, she knew of the bankruptcy proceeding, the June 10 Plan (including the proposed sale of the Dallas lawsuit to Vactronix), and the original claims deadline. Despite her admission that she had actual knowledge of all of these matters, Appellant never filed a proof of claim. In addition, a certificate of mailing shows that notice of the original deadline was mailed to Appellant at a Dallas address on March 9, 2016. Bankr. Docket no. 41 at 7. A subsequent certificate of mailing shows that notice of the shortened claims deadline was mailed to Appellant at the same Dallas address. Docket no. 214-1 at 8. Though Appellant argues that the Dallas address is outdated, she does not challenge the earlier certificate of mailing, nor does she explain how she knew of certain aspects of the case (such as the original claims deadline, notice of which was sent to the Dallas address) but not of the shortened claims deadline (notice of which was sent to the same address).[3] Furthermore, Appellees put forth testimony indicating that no notices, including notice of the bankruptcy court's shortening of the claims deadline, were ever returned to their sender. Docket no. 451 at 58–60.[4] Finally, there is no question that Mr. Hoffman had, at the very least, actual knowledge of the confirmation hearing for the Plan, as he appeared at the June 10 sale hearing and requested permission to appear telephonically at the confirmation hearing. Though the record is unclear as to what relationship Mr. Hoffman had with

---

[3] To support her contention that notice of the shortened deadline was not reasonably calculated to notify her of the bankruptcy proceedings and her opportunity to participate, Appellant points to testimony from yet another lawsuit between Appellant and Debtor. *See* Docket no. 6 at 21 (citing Document no. 9 from Appellant's Designation of the Record on Appeal). The transcript recounts the examination of Appellant (defendant in that case) by Mr. Jason Davis, counsel for Debtor (plaintiff in that case). During that examination, Appellant testified that she resides in Austin, Texas, and provided her address. ROA 9 at 12. Appellant also said, "That is my legal residence. I have multiple homes, as you know." *Id.* at 13. Thus, Appellant's argument goes, Debtor knew that she had a legal residence in Austin, and should have had the notices of the bankruptcy court's orders sent there rather than to the Dallas address. This argument is not convincing. At most, Debtor knew that Appellant's legal residence was in Austin. As Appellant herself testified, though, the Austin address was not her only address.

[4] At the August 1 hearing on Appellant's motion for reconsideration, the bankruptcy court heard the testimony of John Asel, Debtor's former CFO. Asel testified that he received all notices that were mailed in the case, that all notices had Mr. Bill Kingman's address listed as the return address, and that any returned mail would go back to Mr. Kingman. Mr. Kingman, Debtor's attorney, represented to the bankruptcy court that despite being listed as the return addressee on all notices that went out in the bankruptcy proceedings, he received no returned mail.

Appellant at this stage in the proceedings, his June 10 appearance is further, albeit circumstantial, evidence of Appellant's intricate knowledge of the bankruptcy proceedings.

For these reasons, the Court finds that Appellant had notice of the bankruptcy proceedings and was not deprived of due process when the bankruptcy court shortened the proof of claims deadline from July 5 to June 1. Because Appellant did not file a proof of claim and did not object to the confirmation of the plan, yet had notice of the bankruptcy proceedings, she lacks standing to bring this appeal.

## Conclusion

Having considered the parties' briefs and the record, the Court AFFIRMS the decision of the bankruptcy court and finds that Appellant lacks standing to bring an appeal in this Court. This appeal is hereby DISMISSED.

It is so ORDERED.

SIGNED this 18th day of April, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE